WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Tobey H. Thatcher,

    Plaintiff,

v.

Primary Residential Mortgage Incorporated,

    Defendant.

CV 22-00511-TUC-RCC (MAA)

**REPORT AND RECOMMENDATION**

Pending before the court is a motion for summary judgment filed by the defendant, Primary Residential Mortgage Incorporated ("PRMI"), on September 20, 2024.  Doc. 50.

The plaintiff, Tobey Thatcher, filed a response on April 12, 2025.  Doc. 73.  PRMI filed a reply on May 13, 2025.  Docs. 78, 79.

The case has been referred to the Magistrate Judge for report and recommendation pursuant to the Local Rules of Practice.  LRCiv 72.1;  Docs. 18, 22.  A hearing on the motion was held on July 31, 2025.  Doc. 82.

The court should grant PRMI summary judgment on Thatcher's Fair Credit Reporting Act claim.  Summary judgment should be denied on Thatcher's Truth in Lending Act claim and her Arizona Consumer Fraud Act claim.

Background

On January 25, 2019, Thatcher obtained a construction loan from the defendant, PRMI, in the amount of $272,521.00.  Defendant's motion, Doc. 50, pp. 1-2.  She intended to purchase

1  land in Green Valley, Arizona, and build a residence.  *Id*.  The terms of the loan required
2  completion of the residence by July 31, 2019.  Doc. 50, p. 2.  Failure to do so would be
3  considered a material breach, and PRMI could demand immediate repayment of the loan
4  together with accrued interest, costs, and expenses.  *Id*.

5        Thatcher purchased a parcel of undeveloped real property. Doc. 1, p. 3. PRMI disbursed
6  from the loan $30,333, which supplied the down payment on the property; $3,047.64, which
7  was applied to escrow for taxes and insurance;  and $21,000, which went to Thatcher's builder.
8  *Id*.

9        In June of 2019, Thatcher's builder informed her that construction could not be
10 completed until November 30, 2019, and that it had underestimated the cost of bringing utilities
11 to the property by $40,000.  *Id*.  Thatcher tried to find another builder, but she was unsuccessful.
12 The home was never built.  Doc. 1, ¶ 26.

13       On June 2, 2021, PRMI informed Thatcher that it had accelerated her loan repayment
14 and she owed  $272,521.00.  Doc. 50, p. 2.  PRMI concedes that the stated amount was
15 erroneous; Thatcher had only withdrawn approximately $90,000 from the original loan.  *Id*. On
16 July 21, 2021, PRMI corrected its demand and provided Thatcher with a loan payoff amount
17 of approximately $100,000 including interest.  *Id*.

18       PRMI later proposed that the loan contract be extended to October 31, 2021, to allow
19 Thatcher time to sell the land.  *Id*. Thatcher sold the land on November 5, 2021, and signed a
20 Settlement Statement retiring the loan  *Id*.  The American Land Title Association ("ALTA")
21 Settlement Statement reported that she owed a principal balance of $85,768.89 and interest of
22 $19,585.31.  Doc. 50, pp. 2-3.  Thatcher asserts that she disputed the amount of interest and
23 asked for clarification.  Thatcher's response, Doc. 73, p. 4.  She maintains that PRMI never
24 clearly responded to her questions about the interest calculation.  *Id*.

25       On November 7, 2022, Thatcher filed a Complaint in this court. Complaint, Doc. 1.  She
26 claims a cause of action under (1) the Truth in Lending Act, 15 U.S.C. § 1601 et seq.; (2) the

- 2 -

Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534; and (3) the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. Doc. 1.

On September 20, 2024, PRMI filed the pending motion for summary judgment on all counts. Doc. 50.

The court should grant PRMI summary judgment on Thatcher's Fair Credit Reporting Act claim. The remainder of the motion should be denied.

Summary Judgment

Summary judgment is available only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

"The moving party initially bears the burden of proving the absence of a genuine issue of material fact." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). "Where [as here] the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *Id*. "Where the moving party meets that burden, the burden then shifts to the non-moving party to designate specific facts demonstrating the existence of genuine issues for trial." *Id*. "[T]he non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Id*.

"In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the non[-] moving party." *Id*.

Discussion: Truth in Lending Act, 15 U.S.C. § 1601 et seq.

PRMI argues first that Thatcher cannot support her claim under the Truth in Lending Act ("TILA"). Doc. 50, pp. 4-5. It recognizes that Thatcher disputes the ALTA Settlement

- 3 -

Statement and that she asserts an interest overcharge in the amount of $6,613.31. *Id*. PRMI maintains, however, that "she has disclosed no admissible evidence, expert or otherwise, supporting the alleged interest overcharge." *Id*.

"The Truth in Lending Act is designed to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to [her] and avoid the uninformed use of credit." *Barrer v. Chase Bank USA, N.A.*, 566 F.3d 883, 887 (9th Cir. 2009) (punctuation modified) (citing 15 U.S.C. § 1601(a)). "Rather than substantively regulate the terms creditors can offer or include in their financial products, the Act primarily requires disclosure." *Id*.

"Congress delegated expansive authority to the Federal Reserve Board to elaborate and expand the legal framework governing commerce in credit and the Board has exercised its authority by promulgating Regulation Z, set forth at 12 C.F.R. § 226 et seq." *Maxwell v. Union Fid. Mortg., Inc*., 2009 WL 426189, at *4 (E.D. Cal. Feb. 19, 2009) (punctuation modified). "Under the TILA, the material terms that must be disclosed by the creditor include the finance charge, the annual percentage rate, the amount financed, an itemization of the amount financed, the total payments, among others." *Id*. (citing 15 U.S.C. § 1638(a); 12 C.F.R. § 226.18 ). "Regulation Z requires that these disclosures must properly reflect the terms of the legal obligation between the parties." *Id*. (citing 12 C.F.R. § 226.17(c)(1)) (punctuation modified). "The TILA reflects a transition in congressional policy from a philosophy of 'Let the buyer beware' to one of 'Let the seller disclose.'" *Id*.

"Under TILA's Regulation Z, a lender, assignee, or loan servicer must, in response to a borrower's request, provide an accurate statement of the total outstanding balance that would be required to pay the consumer's obligation in full as of a specific date based on the best information available." *McLaughlin v. Wells Fargo Bank, NA*, 2015 WL 10889993, at *1 (N.D. Cal. Oct. 29, 2015) (punctuation modified); *see* 15 U.S.C. § 1639g; *see also Rome v. Rocket Mortg., LLC*, 2023 WL 7105594, at *12 (E.D. Tex. Sept. 13, 2023) (An allegation that the defendant reported an inaccurate payoff balance gives rise to a TILA claim.). "Our court of

appeals has stated . . . that courts should construe TILA's provisions liberally in favor of the consumer." *Id*.

Thatcher claims, among other things, that PRMI failed to clearly disclose the applicable interest rate and finance charges that resulted in the final interest charge of $19,585.31 in the payoff statement. Doc. 73, pp. 3-4; Doc. 1, ¶ 50. She states that, "I asked for a detailed explanation of the balance due. They just told me to look at the closing documents, but those didn't help. I didn't understand how they got to the number they were demanding." Doc. 73, pp. 4, 15; *see also* Doc. 73-1, ¶¶ 3, 19-21. She asserts that, "I sent follow-up emails to the loan officer, and later my attorney did too. We asked how the interest was being calculated. We never got a clear answer." Doc. 73, pp. 4, 15; *see also* Doc. 73-1, p. 7.

Thatcher maintains that the closing documents did not properly explain the payoff interest calculations in spite of PRMI's assurances. She sought further clarification during discovery, but PRMI seemed unable to explain the calculations. She maintains that PRMI's counsel, Richard Armstrong, explained as follows: "I believe CSC [the loan servicer] calculated the interest figure. I don't think we verified it ourselves." Doc. 73, p. 4. PRMI's failure to clearly explain the calculation is some evidence that the proper disclosure was never made.

In its reply brief, PRMI asserts that the ALTA Settlement Statement did, in fact, properly disclose the total interest and *per diem* interest charged. Doc. 79-1, p. 2. According to PRMI, the interest accrues at $18.80 per day and the total, through November 5, 2021, comes to $19,585.31. Doc. 79-1, pp. 4-5. PRMI maintains that these figures are correct and Thatcher's own calculation of the payoff interest amount is faulty.

According to PRMI, Thatcher's initial disclosure statement contains a calculation that uses the interest rate of $18.80 per day and arrives at a total interest of $12,972.00. *Id*. From this calculation, Thatcher concludes that the Settlement Statement overcharged her by $6,613.31. *Id*. PRMI argues in its reply brief that Thatcher's calculation is incorrect and fails to recognize that the loan has been outstanding for *1,016 days* through November 5, 2021, the settlement date. *Id*. PRMI asserts that "Plaintiff has produced no evidence whatsoever of any

interest overcharge . . . ."  Doc. 79-1, p. 5.  The court does not entirely follow PRMI's argument.

Multiplying 1,016 days times an interest rate of $18.80 per day gives a total of $19,100.80, which is not quite the $19,585.31 that appears in the Settlement Statement.  This is some evidence that the Settlement Statement gives an incorrect interest rate or an incorrect payoff amount.  And as the court observed above, when considering a motion for summary judgment, the court "does not make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).  "Rather, it draws all inferences in the light most favorable to the non [-] moving party."  *Id*.

There remains a genuine issue of material fact as to whether PRMI made the proper disclosures and accurately represented the true payoff amount.

PRMI argues in the alternative that the TILA claim is barred by the one-year statute of limitations.  Doc. 50, p. 5 (citing 15 U.S.C. § 1640(e)).  It asserts that the alleged TILA claim occurred on or before November 5, 2021, when Thatcher signed the ALTA loan Settlement Statement.  And because the pending action was filed on November 7, 2022 – one year and two days later –  it is time-barred.  The court does not agree.

"[T]he limitations period in Section 1640(e) runs from the date of consummation of the transaction but . . .  the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. State of Cal*., 784 F.2d 910, 915 (9th Cir. 1986).  In appropriate circumstances, the court may "evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly."  *Id*.

"In determining justifiable application of the equitable tolling doctrine, a court focuses on excusable delay by the plaintiff."  *Chon v. Downey Sav. & Loan Assoc., F.A.*, 2010 WL 3294359, at *2 (E.D. Cal. Aug. 20, 2010) (punctuation modified).  "To establish excusable

delay, the plaintiff must show fraudulent conduct by the defendant resulting in concealment of the operative facts, failure of the plaintiff to discover the operative facts that are the basis of [her] cause of action within the limitations period, and due diligence by the plaintiff until discovery of those facts." *Id*.

In this case, Thatcher presents evidence that she questioned the amount of interest stated in the Settlement Statement. She asked PRMI how the interest was calculated, and PRMI told her to look at the closing documents. A reasonable trier of fact could conclude that the closing documents did not correctly disclose the interest calculation, PRMI knew or should have known this, and PRMI's incorrect statement to the contrary caused an excusable delay in Thatcher discovering the facts underlying her TILA claim. PRMI is not entitled to summary judgment on this issue.

In its reply brief, PRMI directs the court to Thatcher's deposition statement that "she believed that the interest was correct until her attorney found the alleged overcharge." Doc. 79-1, p. 2. PRMI argues that this statement contradicts her argument that she was confused about the payoff calculation. The court does not agree. A reasonable trier of fact could conclude that Thatcher *initially* "believed that the interest was correct" because PRMI told her that the closing documents contained the proper disclosure and she believed PRMI. Only upon further investigation did she discover that PRMI's assurances were not entirely accurate. Thatcher's deposition statement does not contradict her argument that she is entitled to equitable tolling.

Finally, PRMI argues that Thatcher waived her Truth in Lending Act ("TILA") claim because she signed the Settlement Statement including its boilerplate release. Doc. 50, p. 5. That statement contained an acknowledgment that "We/I have carefully reviewed the Estimated ALTA Settlement Statement and find it to be a true and accurate statement of all receipts and disbursements to be made on my account or by me in this transaction and further certify that I have received a copy of the Estimated ALTA Settlement Statement . . . We/I authorize Title Security Agency, LLC to cause the funds to be disbursed in accordance with the Final ALTA

Settlement Statement to be provided to me/us at closing ." *Id*. The court is not convinced that this acknowledgment constitutes a TILA waiver.

First, the acknowledgment does not explicitly state that it constitutes a waiver of TILA rights. Courts are disinclined to find a TILA waiver where, as here, the alleged waiver speaks in general terms and fails to specify that TILA rights are being forfeited. *See Bakker v. Wells Fargo Home Mortg*., 2012 WL 5198220, at *4 (D. Or. June 26, 2012) ("More importantly, Parker emphasized that the release itself did not contain any reference to prospective TILA claims and instead used the boiler plate language of 'any and all claims.'"), report and recommendation adopted, 2012 WL 5197950 (D. Or. Oct. 19, 2012).

In addition, PRMI's waiver theory appears to contravene the public policy behind the TILA. "It has been held in this and other courts that a statutory right conferred on a private party, but affecting the public interest, may not be waived or released if such waiver or release contravenes the statutory policy." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 900–901 (1945). "Where a private right is granted in the public interest to effectuate a legislative policy, waiver of a right so charged or colored with the public interest will not be allowed where it would thwart the legislative policy which it was designed to effectuate." *Id*. at 704, 901. The TILA was enacted in part to ensure that credit terms are meaningfully disclosed and consumers are protected "against inaccurate and unfair credit billing . . . ." 15 U.S.C. § 1601(a). Accepting PRMI's waiver theory would allow a creditor to disregard the TILA as long as the customer signed the appropriate waiver. That would seem to "thwart the legislative policy which it was designed to effectuate." *Brooklyn Savings Bank v. O'Neil*, 324 U.S. 697, 704, 65 S.Ct. 895, 901 (1945); *see, e.g., Bakker v. Wells Fargo Home Mortg*., 2012 WL 5198220, at *6 (D. Or. June 26, 2012) ("Defendants' motion for summary judgment should be DENIED because the waiver of rights under the circumstances presented here thwarts the legislative policy which TILA was designed to effectuate."), report and recommendation adopted, 2012 WL 5197950 (D. Or. Oct. 19, 2012).

<u>Arizona Consumer Fraud Act, A.R.S. §§ 44-1521 to 44-1534</u>

PRMI further argues that it is entitled to summary judgment on Thatcher's claim under the Arizona Consumer Fraud Act ("ACFA"). Doc. 50, p. 6.

"The ACFA prohibits persons from engaging in 'any deception, deceptive or unfair act or practice, fraud, false pretense, false promise, misrepresentation, or concealment, suppression or omission of any material fact with intent that others rely on such concealment, suppression or omission' in connection with the sale or advertisement of consumer goods or services." *Cheatham v. ADT Corp.*, 161 F. Supp. 3d 815, 826 (D. Ariz. 2016) (citing Ariz. Rev. Stat. § 44-1522(A)). "A statement is 'deceptive' if it has the 'tendency and capacity to convey misleading impressions to consumers,' even if 'interpretations that would not be misleading also are possible.'" *Cheatham*, 161 F.Supp 3d at 826 (citing *Madsen v. W. Am. Mortgage Co.*, 143 Ariz. 614, 694 P.2d 1228, 1232 (Ariz.Ct.App.1985)). "Whether a statement has the tendency to mislead is determined from the perspective of the 'least sophisticated reader,' in light of 'all that is reasonably implied, not just from what is said.'" *Id*. at 826-827.

PRMI argues first that Thatcher's allegations that PRMI engaged in various misrepresentations do not constitute a proper ACFA claim because she has no evidence that PRMI *intended* to deceive or defraud her. Doc. 50, p. 7 (citing *Aerotec Int'l, Inc. v. Honeywell Int'l, Inc.*, 4 F. Supp. 3d 1123, 1145 (D. Ariz. 2014), *aff'd*, 836 F.3d 1171 (9th Cir. 2016)). The court does not agree.

Under the ACFA, actions taken by the defendant must be voluntary in the sense that they are undertaken freely, but they need not be accompanied by some sort of nefarious intent. *Powers v. Guar. RV, Inc.*, 229 Ariz. 555, 560, 278 P.3d 333, 338 (Ct. App. 2012). "It is well-settled that a person or entity need not intend to deceive to violate the statute." *Id*. "Rather, to maintain a private cause of action under the act, a plaintiff need only prove a false promise or misrepresentation made in connection with the sale or advertisement of merchandise and the hearer's consequent and proximate injury." *Id*. (punctuation modified). PRMI is not

1 entitled to summary judgment even if Thatcher has no evidence that PRMI intended to deceive
2 or defraud her. Doc. 50, p. 7.
3     PRMI further argues that it is entitled to summary judgment because the alleged
4 misrepresentations did not induce Thatcher to enter into the original loan agreement. Doc. 50,
5 p. 8. They occurred after she defaulted. *Id*.
6     The alleged misrepresentations, however, occurred before Thatcher signed the ALTA
7 Settlement Statement. If they caused her to sign the Settlement Statement, they still could be
8 misrepresentations made "in connection with the sale or advertisement of consumer goods or
9 services." *See Villegas v. Transamerica Fin. Servs., Inc.*, 147 Ariz. 100, 102, 708 P.2d 781, 783
10 (Ct. App. 1985) ("While a loan is ordinarily not thought of as a sale, in fact it is the sale of the
11 present use of money on a promise to repay in the future."); *Kammerer v. PennyMac Loan
12 Servs*. LLC, 2025 WL 904493, at *4 (D. Ariz. Mar. 25, 2025) (The term "merchandise" could
13 refer to "a new loan" or "a loan modification."); *Solovyow v. JPMorgan Chase Bank NA*, 2011
14 WL 13233549, at *6 (D. Ariz. July 6, 2011) (A loan modification qualifies as merchandise
15 pursuant to § 44-1521(5).).
16     PRMI cites *Thomas v. Ally Bank*, 2017 WL 6616620, at *2 (Ariz. Ct. App. Dec. 28,
17 2017) for the proposition that the Arizona Consumer Fraud Act ("ACFA") applies to "fraud in
18 connection with a sale or advertisement of merchandise" but not in connection with "modifying
19 the payment schedule of an existing loan." Doc. 79-1, p. 6. *Thomas*, however, is unpublished
20 and not precedential and fails to provide any reasoning behind this statement. The court fails
21 to understand why the Arizona Consumer Fraud Act ("ACFA") would apply to the purchase of
22 a new loan but would not apply to a payment schedule modification that functions in the same
23 way as a new loan. *See also George Calcut v. Paramount Residential Mortgage Group*, 2025
24 WL 1341672, at *2 (9th Cir. May 8, 2025) (unpublished) ("The Arizona District Court has held
25 at times that, while a loan is merchandise, a loan modification is not . . . . There appears to be
26 no authoritative Arizona state court opinion on the issue."). Moreover, in this case, Thatcher
27 did not obtain a modification of her payment schedule. She paid off the loan in full in

accordance with the Settlement Statement. PRMI provides no authority in support of its implicit argument that the ACFA does not apply to a loan payoff agreement.

PRMI further argues that Thatcher's ACFA claims are barred by the one-year statute of limitations. Doc. 50, p. 8. It asserts that "the limitations period begins to run when the consumer discovers or with reasonable diligence should have discovered both the 'who' and the 'what' of her alleged claim," which here occurred "by November 5, 2021 – when she sold her property and paid off the construction loan after signing the ALTA settlement statement . . . ." *Id*. (citing *Cheatham v. ADT Corp*. 161 F.Supp. 3d 815, 826 (D. Ariz. 2016)). As the court explained above, however, a reasonable trier of fact could conclude that PRMI's representation that the pay-off interest amount could be calculated from information contained in the Settlement Statement itself was a false statement that could have delayed Thatcher from discovering her claims even though she was acting diligently. And a reasonable person could conclude that this delay was sufficient to excuse the *two days* by which Thatcher's filing date exceeded the statute of limitations.

Finally, PRMI cites *Tedder v. Deutsche Bank Nat. Tr. Co*., 863 F. Supp. 2d 1020, 1030 (D. Haw. 2012) in support of its argument that "to the extent that Plaintiff's ACFA claims are based upon PRMI's alleged TILA violations, such claims are preempted by TILA." Doc. 50, p. 8. *Tedder*, however, justified this point of law by citing to *Enriquez v. Countrywide Home Loans*, FSB, 814 F.Supp.2d 1042, 1063–64 (D.Hawai'i 2011), which cited to *Kajitani v. Downey Sav. & Loan Ass'n, F.A.*, 647 F.Supp.2d 1208, 1220 (D.Hawai'i 2008). *Tedder*, 863 F.Supp.2d at 1030. The court is not convinced that *Kajitani* is still good law.

The *Kajitani* court stated as follows: "[T]o the extent the Kajitanis' state law claims rest on TILA violations or concern subject matters *explicitly preempted in 12 C.F.R. § 560.2(b)*, those claims are clearly preempted." *Kajitani*, 647 F.Supp.2d at 1220 (emphasis added). Section 560.2(b), however, has been removed from the regulations. Apparently, it was created at a time when Congress favored sweeping field preemption in the Savings and Loan area. *Henning v. Wachovia Mortg*., *FSB*, 969 F. Supp. 2d 135, 145-146 (D. Mass. 2013). Since that

time, Congress has revisited the issue and now favors preemption only when there is a conflict. *Id.*; *see also* https://www.federalregister.gov/documents/2017/10/11/2017-21904/removal-of-office-of-thrift-supervision-regulations#page-47084 ("For the reasons set forth in the preamble and pursuant to titles III and X of the Dodd-Frank Act, amend title 12 of the Code of Federal Regulations by removing chapter V."). PRMI does not explain why the court should still follow *Tedder* in light of these developments. The court considers instead the preemption statute contained within the TILA.

The TILA preemption statute states that TILA "do[es] not annul, alter, or affect the laws of any State relating to the disclosure of information in connection with credit transactions, except *to the extent that those laws are inconsistent* with the provisions of this subchapter, and then only to the extent of the inconsistency." 15 U.S.C.A. § 1610 (a)(1) (emphasis added).

PRMI does not allege that the Arizona Consumer Fraud Act ("ACFA") is "inconsistent" with the Truth in Lending Act ("TILA"). Accordingly, the court should deny its argument for preemption. *See Jordan v. Paul Fin., LLC*, 745 F. Supp. 2d 1084, 1095 (N.D. Cal. 2010) ("TILA preempts state law only to the extent state disclosure requirements are explicitly inconsistent with federal law.").

<u>Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq.</u>

PRMI further argues it is entitled to summary judgment on Thatcher's claim under the Fair Credit Reporting Act ("FCRA") arising out of PRMI's erroneous initial report that Thatcher owed $272,521.00, the full amount of the loan. Doc. 50, pp. 2, 9. The court agrees.

"Congress enacted the Fair Credit Reporting Act ('FCRA'), 15 U.S.C. §§ 1681–1681x, in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1153 (9th Cir. 2009) (punctuation modified). "As an important means to this end, the Act sought to make consumer reporting agencies exercise their grave responsibilities in assembling and evaluating consumers' credit, and disseminating information about consumers' credit with

fairness, impartiality, and a respect for the consumer's right to privacy." *Id*. (citing 15 U.S.C. § 1681(a)(4)). "In addition, to ensure that credit reports are accurate, the FCRA imposes some duties on the sources that provide credit information to CRAs [Credit Reporting Agencies], called 'furnishers' in the statute." *Id*.

First, there is the duty to provide accurate information. 15 U.S.C. § 1681s-2(a). For example, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." 15 U.S.C.A. § 1681s-2(a)(1)(A). Subsection (a) duties, however, "are enforceable only by federal or state agencies." *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009) (punctuation modified). Subsection (a), therefore, does not supply a cause of action for Thatcher, but subsection (b) is another matter.

Besides the duty to provide accurate information, "Section 1681s–2(b) imposes a second category of duties on furnishers of information." *Id*. at 1154. "These obligations are triggered 'upon notice of dispute'— that is, when a person who furnished information to a CRA [credit reporting agency] receives notice from the CRA that the consumer disputes the information." *Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009). And there *is* a private right of action for these section (b) duties. *Id*.

> Subsection 1681s–2(b) provides that, after receiving a notice of dispute, the furnisher shall:
>
> (A) conduct an investigation with respect to the disputed information;
>
> (B) review all relevant information provided by the CRA [credit reporting agency] pursuant to section 1681i(a)(2);
>
> (C) report the results of the investigation to the CRA;
>
> (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs to which the person furnished the information; and
>
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1)[,] (i) modify (ii) delete or (iii) permanently block the reporting of that item of information to the CRAs.

- 13 -

*Gorman v. Wolpoff & Abramson*, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009) (punctuation modified) (citing § 1681s–2(b)(1)).

"These duties arise only after the furnisher receives notice of [the] dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Id*. Moreover, the Ninth Circuit has held that a furnisher's investigation must be "reasonable." *Id*. at 1157.

Apparently, Thatcher's Fair Credit Reporting Act ("FCRA") claim stems from PRMI's erroneous initial report to the credit agencies that Thatcher owed $272,521, the total amount of the loan. *See* Doc. 73-18, p. 3 (Notice of Acceleration and Demand for Payment dated May 27, 2021). In fact, she had only withdrawn approximately $90,000 of the total, and she only owed this smaller amount (plus interest, etc.). PRMI concedes that it made this error but asserts that by July 21, 2021, the error had been corrected. Doc. 50, p. 2.

Thatcher argues in her response brief that PRMI violated the FCRA by conducting an investigation of the alleged error, discovering that an error was made, and then failing to report the results of its investigation to the Credit Reporting Agencies. Doc. 73, p. 10. Thatcher, however, fails to provide evidence supporting her theory. According to Thatcher, in-house counsel Armstrong stated, "I don't recall if we responded to her complaint about the credit report." Doc. 73, p. 10. He continued, "It would have gone to origination compliance, not servicing, so I don't know what follow-up was done." Doc. 73, p. 10. This is evidence that Armstrong does not know how PRMI responded to Thatcher's dispute. It might be considered some evidence that PRMI failed to conduct any investigation at all, but Thatcher does not argue that. She asserts that PRMI conducted an investigation, discovered the error, and failed to report the results of its investigation to the Credit Reporting Agencies. Doc. 73, p. 10. Armstrong's statements do not support her theory.

In fact, PRMI sent Thatcher a letter dated July 7, 2021, in which PRMI states as follows: "We have placed a Compliance Condition Code on the account to convey that PRMI has

- 14 -

completed the investigation of your dispute and submitted the appropriate corrections to the credit reporting agencies." Doc. 73-17, p. 2. It appears that PRMI did investigate her complaint, did discover its error, and did report the correction to the Credit Reporting Agencies. Thatcher concedes that the error was fixed by October of 2024. Thatcher deposition, Doc. 73-8, p. 45. Presumably, it was fixed because PRMI told the Credit Reporting Agencies that its earlier information was erroneous.

The court concludes that PRMI is entitled to summary judgment on Thatcher's Fair Credit Reporting Act claim that PRMI conducted an investigation into the correct amount that Thatcher owed, discovered its error, and failed to report the results of its investigation to the Credit Reporting Agencies. Doc. 73, p. 10.

RECOMMENDATION

The Magistrate Judge recommends that the District Court, after its independent review of the record, enter an order GRANTING in PART the motion for summary judgment filed by the defendant, Primary Residential Mortgage Incorporated ("PRMI"), on September 20, 2024. Doc. 50. The court should grant PRMI summary judgment on Thatcher's Fair Credit Reporting Act claim. The remainder of the motion should be denied.

Pursuant to 28 U.S.C. §636 (b), any party may serve and file written objections within 14 days of being served with a copy of this report and recommendation. If objections are not timely filed, the party's right to de novo review may be waived. The Local Rules permit the filing of a response to an objection. They do not permit the filing of a reply to a response without the permission of the District Court.

DATED this 12th day of August, 2025.

Honorable Michael A. Ambri
United States Magistrate Judge